# Exhibit C



DEPARTMENT OF THE NAVY
OFFICE OF THE GENERAL COUNSEL
1000 NAVY PENTAGON
WASHINGTON, D. C. 20350-1000

AUG  5 2005

CERTIFIED MAIL -- RETURN RECEIPT REQUESTED

James D. Miller
King & Spalding LLP
1700 Pennsylvania Ave, NW
Washington, DC  2006-4706

Dear Mr. Miller:

   This letter is the final administrative adjudication of your 1 April 2005 Freedom of Information Act (FOIA) appeal, on behalf of Ivers Cooper.

   Upon review, I conclude that the information has been properly withheld from disclosure under exemptions 3 and 4 of FOIA.

   Exemption 3 allows agencies to withhold records "specifically exempted from disclosure by statute," provided the statute "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding, or refers to particular types of matters to be withheld." One such exempting statute is 35 U.S.C. § 205.

   That statute authorizes Federal agencies to withhold "information disclosing any invention in which the Federal Government owns or may own a right, title, or interest (including a non-exclusive license) for a reasonable time in order for a patent application to be filed." The Government may own a right, title, or interest in inventions stemming from research it has funded. Also, the statute provides that agencies cannot "be required to release copies of any document which is part of an application for a patent filed with the United States Patent and Trademark Office or with any foreign patent office."

   Under 37 C.F.R. § 401.13(c)(1) and (2), "[t]o the extent authorized by 35 U.S.C. § 205, agencies shall not disclose to the third parties pursuant to requests under

the Freedom of Information Act (FOIA) any information disclosing a subject invention for a reasonable time in order for a patent application to be filed." And, "[i]n accordance with 35 U.S.C. § 205, agencies shall not disclose for a period of 18 months from the filing date of the patent application to third parties pursuant to the Freedom of Information Act, or otherwise, copies of any document which the agency obtained under this clause which is part of an application for patent with the U.S. Patent and Trademark Office or any foreign patent office. . . ."

The slide presentation you requested is composed of 30 slides. With the exception of slides 1, 2, 3, and 30, the slide presentation reflect research that Office of Naval Research (ONR) funded under grant N00014-00-1-0596. The Government appears to have a license to at least one of the inventions described in the slide presentation. Several of other slides describe Government-funded potential inventions in which, at the very least, the Government "may own" a right, title, or interest to inventions described therein.

Even if the Government does not own a right, title, or interest in these inventions, it must still withhold slides for at least 18 months if the slides are part of patent applications not yet published. In this regard, information from all the slides, except numbers 1, 2, 3, 21, 26 and 30, has been included in nine U.S. and eight foreign patent applications and three independent claims.

Of the nine U.S. patent applications the submitter listed, two have not yet been published. These two applications were filed on 31 May 2005. Consequently the slides related to these two applications are within the 18 month period during which they are subject to withholding under 35 U.S.C. § 205.

Although many of the slides may be withheld under exemption 3 as discussed above, exemption 4 applies to the majority of the slides that have been withheld, including those subject to exemption 3 in this case.

Exemption 4 of the FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential. . ." 5 U.S.C. § 552(b)(4). This exemption is intended to protect both the interests of commercial entities that submit proprietary

information to the government and the interests of the government in receiving continued access to such data.

The Court of Appeals for the District of Columbia Circuit has firmly held that the terms "commercial or financial" should be given their "ordinary meanings" and has specifically rejected the argument that the term "commercial" be confined to records that "reveal basic commercial operations," holding instead that records are commercial so long as the submitter has a "commercial interest" in them. Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983).

A two-part test for determining whether commercial or financial information is confidential was set out in National Parks & Conservation Association v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974):

> To summarize, commercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

In Critical Mass Energy Project v. NRC, 975 F.2d 871 (D.C. Cir. 1992), cert. denied, 113 S.Ct. 1579 (1993), the District of Columbia Court of Appeals reaffirmed the National Parks test for confidentiality but confined it to cases involving information that persons were required to provide to the government. In addition, the court announced an entirely new test for the protection of information that is "voluntarily" submitted. Such information is now categorically protected provided it is not "customarily" disclosed to the public by the submitter. In this case, the responsive documents would be exempt from disclosure under either the competitive harm test of National Parks or the voluntarily submitted test of Critical Mass.

There is no single legal test to distinguish between voluntary and involuntary submissions. One guiding principle is that agencies should determine whether the submission was required "as a condition of doing business

3

with the government."[1]  If it was, the submission was most likely involuntary.

   The slide presentation at the Coolfont program review was a voluntary submission for the purpose of Exemption 4 of the FOIA.  The submitter in this case, Dr. Liu, is an academic but also a partner in a small scientific applications firm.  With help from an ONR research grant, he developed information with commercial value.  At least part of this information is described on the slides he presented at Coolfont.  This slide presentation was not a requirement under his grant agreement.  The reporting requirements are described nonspecifically with the phrase "as required," and the program officer for the Coolfont series explained that this language is not interpreted as requiring grantees to "report," or make presentations, at Coolfont.

   Even if Dr. Liu had felt compelled to make his presentation, that subjective belief alone would not be a proper basis for determining that his submission was involuntary.[2]

   Dr. Liu's slide presentation at Coolfont does not appear to be the type of information that he would customarily disclose to the public.  As noted, Exemption 4 of the FOIA protects commercial or financial information voluntarily submitted to the Government, provided the information is "of a kind" that the submitter would not customarily release to the public.  This custom is determined from how the submitter, and not the industry as a whole, would treat the information.[3]

   Coolfont was a private event for ONR grantees.  Attendance was by invitation only.  Before sharing his slide presentation, Dr. Liu sought, and received, assurance from Coolfont organizers that its confidentiality would be

---

[1] Judicial Watch, Inc. v. Exp.-Imp. Bank, 108 F.Supp. 2d 19, 28 (D.D.C. 2000) and Lepelletier v. FDIC, 977 F.Supp. 456, 460 n.3 (D.D.C. 1997).

[2] See Critical Mass, 975 F.2d at 879; See also Center for Auto Safety v. Nat'l Highway Traffic Safety Administration, 244 F.3d 144, 149 (D.C. Cir. 2001).

[3] Id. at 872, 878, 879-80.

4

protected. Dr. Liu relied on this assurance. As further evidence of his intentions, Dr. Liu marked his presentation "confidential." The circumstances under which Dr. Liu sought to make his presentation at Coolfont suggest, therefore, that he did not intend it to be a public disclosure. Accordingly, it appears that the subjective test controlling this issue has been met and the information was properly withheld under exemption 4.

Even if the presentation was involuntary, the slides were properly withheld from release as confidential commercial information the release of which would cause substantial competitive harm to the submitter and would impair the Governments ability to obtain necessary information in the future.

The "impairment" prong of this test applies when disclosure of involuntarily submitted information would lessen the reliability or quality of information submitted to the Government. In other words, the disclosure today may chill the submission of information tomorrow. Exemption 4 is designed not only to protect the submitter's commercial interests but also to ensure the continued availability of information useful to the Government. In other words, "[u]nless persons having necessary information can be assured that it will remain confidential, they may decline to cooperate with officials, and the ability of the Government to make intelligent, well-informed decisions will be impaired."[4]

The Coolfont series of program reviews are important opportunities for ONR to effect decisions and evaluate research through informal peer review and discussion. Public disclosure of information discussed at the program reviews and for which confidential treatment has been promised may chill the free flow of information to the point that some grantees may decline to participate entirely. Either of these results would impair the Government's ability to receive the quantity and quality of information it needs.

Besides impairing the Government's ability to obtain information, disclosure of the slides carries a high risk of injuring the competitive position of the Dr. Liu. When

---

[4] Critical Mass, 975 F.2d at 878.

5

opposing disclosure under this prong, the submitter "need not 'show actual competitive harm'; evidence revealing 'actual competition and the likelihood of substantial competitive injury' is sufficient to bring commercial information within the realm of confidentiality."[5] The competitive harm determination looks at the "harm flowing from the affirmative use of proprietary information by competitors."[6]

The slides at issue contain confidential commercial information concerning, among other things, what methods, reagents, reaction schemes, and reaction conditions had been conceived and reduced to practice at the time of the Coolfont meeting. A competitor could use the slides to determine Dr. Liu's priority of the invention based on the date of the presentation. This knowledge could give the competitor a strategic advantage when preparing to challenge the priority of Dr. Liu's invention at a patent interference proceeding. As a result, Dr. Liu's slide presentation may be withheld as confidential commercial information under Exemption 4.

In your appeal you contends that the requested information is in the public domain because (1) the slide presentation constituted a publication of the information; and (2) various parts of the slide presentation were incorporated in patent applications and other public documents such as scholarly articles.

The presentation at Coolfont did not put the slides into the public domain. Coolfont was not intended as a setting for publication of participants' work. Instead, Coolfont was a private meeting under Government direction for a group of less than 50 Government grant recipients. It was akin to an internal Government meeting held behind closed doors. Coolfont organizers intended the meeting to be a confidential gathering. Therefore all participants were advised, both orally and by a large written notice at the front of the conference room, that the proceedings were to be kept confidential. There is no indication that attendees did not believe the proceedings to be such. Dr. Liu himself did not intend his presentation to be a

---

[5] Gulf & Western Industries v. United States, 615 F.2d 527, 530.

[6] Pub. Citizen Health Research Group v. FDA, 704 F.2d 1280, 1291 n.30 (D.C. Cir. 1983) (emphasis in original).

6

publication and, accordingly, marked his presentation "confidential."

To emphasize the confidential nature of the setting, Coolfont organizers noted that Coolfont was being held under "Gordon Conference-type" rules. The Gordon Research Conference is a private, non-profit organization that sponsors scientific and technical conferences. To stimulate open and free discussion of ideas, the proceedings of these conferences are confidential. Gordon Research Conferences are a convenient way to hold confidential scientific meetings, but they are not the only way. The Coolfont program reviews have never been held under the auspices of this organization. Reference by Coolfont organizers to "Gordon Conference Rules" was a shorthand way to remind participants that they were to keep the proceedings to themselves; it was not a suggestion that Coolfont was a Gordon Research Conference. That procedures for actual Gordon Conferences may not have been strictly followed at Coolfont does not vitiate the fact that it was held under a mantle of confidentiality.

That the slide may contain information in the public domain does not automatically require release. Though some of the information may already be in the public domain, the slide presentation as a whole is not. Furthermore, the information cannot be segregated without defeating protection of the submitter's intellectual property and commercial interests.

A record is not itself in the public domain simply because some of its information has been disclosed collaterally, or in a different context. The record may have value beyond its component parts precisely because of the manner in which it juxtaposes public with nonpublic information, or because of the way in which it organizes or contextualizes the information, and therefore the record may be withheld.

Under a "mosaic" approach to the competitive harm prong of Exemption 4, information that would normally be unprotected may gain Exemption 4 protection when the information is combined together or linked with publicly available information such that disclosure of the aggregated information may result in competitive harm to the submitter. In the present case a competitor wishing to challenge the priority of an invention described on the

slides may use the information imparted by the slide presentation to determine which concepts the submitter had reduced to practice by the date of the presentation, which is information that is not in the public domain.

For the foregoing reasons the bulk of the slide presentation was properly withheld under exemptions 3 and 4. It does appear, however, that slides 2, 3, and 30 may be released. I have requested the Office of Naval Research to release these slide to you following the required notification to the submitter of this intended action.

This letter constitutes final partial denial of your appeal by the designated appellate authority for this matter, the Deputy General Counsel of the Department of the Navy. Judicial review of this action may be sought as described in 5 U.S.C. § 552 (a)(4)(B)-(G).

Sincerely,

William R. Molzahn
Deputy General Counsel