IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IVER P. COOPER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF THE NAVY, )<br>)<br>Defendant. )<br>)<br>_____ ) | Civil Action Number: 05-2252 (EGS) |

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff filed a Freedom of Information Act request with the Department of Navy on May 25, 2004 seeking copies of 30 slides presented by Professor David Liu at a by invitation-only, closed door, confidential presentation of Naval grant recipients. Defendant denied plaintiff's request on February 1, 2005. Plaintiff appealed on April 1, 2005 and defendant denied the appeal on August 5, 2005, releasing copies of only 4 of the 30 slides. Both Parties have filed for summary judgment. Defendant files this memorandum of points and authorities in opposition to Plaintiff's Motion for Summary Judgment.

Plaintiff raises four arguments in his Motion for Summary Judgment regarding why Plaintiff believes Exemptions 3 and 4 to the Freedom of Information Act (FOIA) do not apply to the requested records. All are without merit and Plaintiff's Motion should be denied.

### II. ARGUMENT

### A. The Navy Is Not Precluded from Raising New Exemptions During the Administrative Appeal

Plaintiff first argues that because the Navy first raised Exemption 3 in response to his administrative appeal it would be "inequitable for the Navy to be permitted to rely on a new-found theory." Pl. MSJ p. 3. It is well settled that:

> The FOIA clearly directs district courts to review agency actions de novo. See 5 U.S.C. 552(a)(4)(B). Therefore, an agency is not barred from invoking a particular exemption in litigation merely because that exemption was not cited in responding to the request at the administrative level. See, e.g., Young v. Central Intelligence Agency, 972 F.2d 536, 538-39 (4th Cir. 1992); Gula v. Meese, 699 F. Supp. 956, 959 n.2 (D.D.C. 1988).

Sinito v. United States DOJ, 2000 U.S. Dist. LEXIS 22504 (D.D.C. 2000). Plaintiff's claim is clearly meritless.

### B. The Information on the Slides is Confidential

Plaintiff next argues that the information on the slides was not confidential. In support of this argument Plaintiff makes three factual assertions: 1) the cover slide released by the Navy did not say "Confidential," 2) the Navy did not release any confidentiality agreement, and 3) the presentation was made to more than 50 scientists without any confidentiality agreement. PL MSJ p. 4. Plaintiff makes no effort to tie these factual allegations to the legal standard for confidentiality under Exemption 4.

The test used to determine whether commercial or financial information is confidential under Exemption 4 is determined by whether the information was voluntarily submitted or was required to be submitted. Critical Mass Energy Project v. NRC, 975 F.2d 871 (D.C. Cir. 1992). For information "voluntarily" submitted to the government, such as the slides at issue here, such information is categorically protected provided it is not "customarily" disclosed to the public by

the submitter.  For information that is "required" to be submitted to the government, the test for confidentiality continues to be the one set forth in National Parks & Conservation Association v. Morton, 498 F2d 765, 770 (D.C. Cir. 1974) whereby "commercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future, or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." Id.  The slides at issue here, however, are exempt from disclosure under either the "competitive harm" test of National Parks or the "voluntarily submitted" test of Critical Mass.

     This slide presentation was not a requirement for Professor Liu under his grant agreement. Bright Declaration ¶ 13 (Exhibit 3).[1]  The only report required to be filed by Professor Liu was a final technical report, filed on August 4, 2003.  Exhibit 3. ¶ 13. The Navy had no legal authority to compel disclosure of the slide presentation and thus the presentation was voluntary.  Before sharing his slide presentation, Professor Liu sought, and received, assurances from Coolfont organizers that its confidentiality would be protected.  Exhibit 2; Liu Decl. (2004) ¶ 5-7; Exhibit 3 ¶ 10.   Professor Liu relied on these assurances.  Exhibit 2 ¶ 9.  As further evidence of his intentions, Professor Liu marked his presentation "confidential."  Exhibit 2 ¶ 7 and attachment 1 (Referenced as "Exhibit D" in the affidavit).  Professor Liu's steps to

---

[1] All exhibit numbers refer to the number given in Defendant's Motion for Summary Judgment, Docket entry 11.

ensure confidentiality show that he did not intend it to be a public disclosure and the information is a kind that he would not customarily disclose.

None of the allegations made by Plaintiff alter the fact that the presentation was voluntary and that Professor Liu would not customarily disclose the information.  The individual slides may not have been marked confidential but Professor Liu labeled the slide presentation "confidential" when providing it to the Navy.  Exhibit 2 ¶ 7.  The Navy took steps to ensure that the meeting was confidential, limiting attendance to invited Office of Naval Research (ONR) grant recipients, program managers and one ONR scientist (Exhibit 3 ¶ 6), and reminding participants that they were under strict confidentiality rules and posting a sign to that effect.  Exhibit 3 ¶ 10.  The presence of ONR grant recipients does not alter the confidential nature of the communication.  Finally, participants at the meeting considered the presentations to be confidential (Bright Declaration ¶ 11).

Nor do Plaintiff's allegations change the fact that the slides qualify as confidential under the stricter National Parks test.  Under the National Parks test, commercial or financial information is considered to be confidential for purposes of Exemption 4 if disclosure of the information is likely to have either of the following effects: "(1) to impair the government's ability to obtain necessary information in the future or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  498 F.2d at 770.  Disclosure of the information in the slides would have both effects.  The mere prospect of this type of information being releasable under the FOIA has led researchers to express doubts about attending future conferences.  Exhibit 3. ¶ 15.  Actual release of this confidential commercial information will "seriously damage the ability of the U.S. Navy... to obtain the reliable flow of

high quality information necessary to continue developing improved technologies for its mission." Exhibit 3. ¶ 15.

As explained more fully in Defendant's Motion for Summary Judgment, the information at issue would be extraordinarily valuable to a competitor of Professor Liu's in any patent interference proceeding. In United States patent practice the dates of conception and reduction to practice are key dates, and patent applicants understandably take great efforts to preserve the confidentiality of these dates. *See* 35 U.S.C. § 102 (g). Releasing exactly what Professor Liu had conceived and exactly what he had reduced to practice as of the Coolfont IV meeting would not only aid a competitor in determining whether to provoke a patent interference but also allow the competitor to adjust the date they claim to have conceived their invention and had reduced it to practice. The divulgence of the content of Professor Liu's slide presentation from November 11, 2000 would provide his competitors and his company's competitors with a competitive advantage over him and his company. Exhibit 2 ¶ 13, Liu Decl. (2005) Exhibit 4 ¶ 5.

Accordingly, this information would provide his competitors with -as yet- secret dates that must be beaten in order to prevail in a patent interference. Because a competitor is not required to disclose the date that he or she conceived or reduced to practice until much later in the process, a premature disclosure of this type of information would place Professor Liu and his company at a significant procedural disadvantage by providing Professor Liu's opponent with information that the opponent could use to fashion its case and to maximize its chances of prevailing in a patent interference proceeding. Accordingly, the disclosure to third parties of what Professor Liu had conceived and reduced to practice as of the date of the Coolfont IV

meeting would, therefore, place Professor Liu and his company at a significant competitive disadvantage relative to their competitors. Id.

### C. The Information Contained in the Slides Is Commercial or Financial Information

Plaintiff next contends that the information in the slides is neither "commercial" nor "financial" but rather a scientific presentation. PL MSJ p. 5. The term "commercial information" is broad with the words given their ordinary meaning. Public Citizen Health Research Group v. Food & Drug Admin., 704 F.2d 1280, 1290 (D.C. Cir. 1983). "Commercial information" includes not only information that reveals basic commercial operations but also information in which the submitter has a "commercial interest". Id. at 1290.

The slides presented by Professor Liu at the Coolfont IV meeting on November 11, 2000 contain extremely sensitive and valuable commercial information. Exhibit 2 ¶ 8, ¶ 13. In particular, Professor Liu's slides describe (i) the concept of nucleic acid mediated organic syntheses together with its advantages over traditional organic syntheses, (ii) suitable chemical reagents, (iii) reaction schemes and reaction conditions for performing nucleic acid mediated organic synthesis, (iv) results from certain experiments performed in Professor Liu's laboratory, as well as Professor Liu's progress as of the Coolfont meeting. Exhibit 2 ¶ 8. Professor Liu's employer, Harvard University has applied for one or more patents based on the research described in the slides and Professor Liu's business, Ensemble Discovery Corporation, has an exclusive license for the inventions being patented. Exhibit 2 ¶¶ 12 and 13. Clearly the information meets the broad definition of commercial or financial information adopted in Public Citizen *supra.*

**D.  The Information Contained in Slides 21 and 26 Are Exempt under Exemption 3.**

Plaintiff argues that Exemption 3 does not apply to the withheld slides because 35 U.S.C. § 205 has never been held to be a withholding statute under Exemption 3 and the five years since the CoolFont IV conference exceeds the "reasonable time" allowed for a patent application to be filed under the Statute.

An Exemption 3 withholding statute "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding, or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).   35 U.S.C. § 205 clearly qualifies as an exempting statute.  The statute provides:

> Federal agencies are authorized to withhold from disclosure to the public information disclosing any invention in which the Federal Government owns or may own a right, title, or interest (including a nonexclusive license) for a reasonable time in order for a patent application to be filed. Furthermore, Federal agencies shall not be required to release copies of any document which is part of an application for patent filed with the United States Patent and Trademark Office or with any foreign patent office.

The statute could hardly be clearer that the agencies are "authorized to withhold" information regarding an invention the government may have an interest in for a reasonable time to allow for a patent application to be filed and are not required to release any document that is part of a patent application.  Id.  The statute's role as a FOIA exempting statute is set forth at 37 C.F.R. 401.13(c)(1) and (2), which repeats the statute's prohibitions on disclosing patent-related information in the context of withholding information requested under the FOIA.

The statute does not define a reasonable period of time, and as far as the Defendant is aware no court has provided any guidance under 35 U.S.C. § 205 as to what length of time is considered *per se* unreasonable.  Plaintiff merely poses a rhetorical question: "[s]urely five years

is a sufficiently 'reasonable time for a patent application to be filed'?  PL MSJ p. 7.  Defendant assumes that if Plaintiff had any authority for its position, it would have provided actual authority rather than posing a question.  Defendant submits that five years is not an unreasonable period of time for filing a patent application because patent applicants, for business and financial reasons, should be given flexibility on when to file their patent applications.  Notwithstanding, in this instance, the information in most of the slides has been made part of numerous U.S. and foreign patent applications.  *See* attachment A to exhibit 1 (final agency decision).  The fact that information from 2 of 27 slides has yet to be made part of a patent application after five years is not unreasonable.

### III.  CONCLUSION

For the foregoing reasons and those stated in Defendant's Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment should be denied and Defendant's granted.

Respectfully submitted,

_____/s_____
KENNETH L. WAINSTEIN., D.C. Bar #451058
United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney


_____/s_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C. 20530

                                        (202) 353-9895

OF COUNSEL:
Luis P. Leme
Office of Naval Research (Code 00CC)
One Liberty Center
875 N. Randolph Street, Suite 1425
Arlington, VA  22203-1995