IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IVER P. COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number: 05-2252 (EGS) |
| ) | |
| U.S. DEPARTMENT OF THE NAVY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

### I. INTRODUCTION

Plaintiff offers two arguments against defendant's motion for summary judgment. Specifically, Plaintiff argues that Professor Liu's slide presentation is not confidential and that it does not constitute commercial information. Both arguments, however, ignore the controlling legal standard and are without merit.

### I  PROFESSOR LIU'S SLIDES CONTAIN CONFIDENTIAL INFORMATION

Plaintiff argues that the information contained in the slides is not "confidential". This argument is without merit. Commercial information is confidential provided it is not "customarily" disclosed to the public by the submitter when the information is voluntarily submitted to the government. Critical Mass Energy Project v. NRC, 975 F.2d 871 (D.C. Cir. 1992). Plaintiff does not and can not raise any argument that the information at issue was not

voluntarily submitted. See Bright Declaration ¶¶13, 14 (Exhibit 3).[1] Specifically, Harold Bright, the Navy official responsible for the conference and Professor Liu's program manager for his Office of Naval Research ("ONR") grant (Exhibit 3 ¶ 1) considered Professor Liu's presentation at the program review to have been a "voluntary submission" in response to his invitation (Exhibit 3 ¶ 14), and that Professor Liu voluntarily submitted a copy of his slides to Mr. Bright. (Exhibit 3 ¶ 12).

Plaintiff argues that the key factual issue is whether the slide presentation was marked as confidential. However, under <u>Critical Mass,</u> the key issue is whether the submitter customarily discloses the information to the public. Marking the slide presentation confidential is only one piece of evidence, and a relatively minor one, that Professor Liu does not customarily provide this type of sensitive data to the public prior to the filing of a patent application. Before sharing his slide presentation, Professor Liu sought, and received, assurances from Coolfont organizers that its confidentiality would be protected. See Liu 2004 Declaration ¶¶ 5-7 (Exhibit 2). At the presentation, Harold Bright, the Navy official responsible for the conference and Dr. Liu's program manager for his Navy grant, reminded the audience that they were under strict confidentiality rules and posted a statement to that fact on a large flip chart at the front of the conference room. Exhibit 3 ¶ 10.

In a FOIA case, summary judgment may be granted solely on the basis of agency affidavits if they are clear, specific, and reasonably detailed; if they describe the withheld information in a factual and non-conclusory manner; and if there is no contradictory evidence on

---

[1] All exhibit numbers refer to the number given in Defendant's Motion for Summary Judgment, Docket entry 11.


the record or evidence of agency bad faith.  See Western Ctr. for Journalism v. IRS, 116 F. Supp. 2d 1, 7 (D.D.C. 2000) (citing Hayden v. NSA, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).  Professor Liu's and Harold Bright's declarations clearly demonstrate that the conference was confidential; the participants were informed it was confidential, and the submitter would not have provided the information had it not been confidential.  Exhibit 3 ¶¶10, 11, Exhibit 2 ¶¶5, 7, 9.

Plaintiff also refers to the conference as being a presentation to "50 unrelated, independent scientists."  This wholly unsubstantiated statement is in direct contradiction to the detailed declaration of Harold Bright who explains that the Coolfont IV conference was by-invitation-only.  Exhibit 3 ¶ 6.  Harold Bright then went on to explain that most of the participants at the by-invitation-only meeting were ONR grant recipients (also known as principal investigators).  Id.  In addition to the principal investigators, there were a few assistants of the principal investigators, U.S. Department of Navy program managers and one U.S. Department of the Navy scientist.  Id.  It is unclear what Plaintiff means by "unrelated, independent scientists," but the Navy's declarations show the audience at the conference was limited to those working on  projects funded by the ONR and held for the sole purpose of allowing "a select number of grant recipients to engage in presentation and discussion of current ONR-funded research in a confidential setting."  Exhibit 3 ¶ 7.

The D.C. Circuit has recognized the purposes of protecting information voluntarily provided and warned against the consequences of failing to offer that protection.  In Critical Mass the Court stated:

> When a FOIA request is made for information that is furnished on
> a voluntary basis, … the purpose served by the exemption in such
> instances is that of encouraging cooperation with the Government
> by persons having information useful to officials… Unless persons

>           having necessary information can be assured that it will remain
>           confidential, they may decline to cooperate with officials, and the
>           ability of the Government to make intelligent, well informed
>           decisions will be impaired.

<u>Critical Mass Energy Project v. Nuclear Regulatory Comm'n</u>, 975 F.2d 871, 878 (D.C. Cir. 1992).  The consequences of failing to protect information voluntarily provided to the government is apparent in this case.  The mere filing of the present FOIA case has already had a chilling effect on the cooperation of other ONR grant recipients participating in these vital reviews.  Exhibit 3 ¶ 15.  Harold Bright explained that other researchers, having heard of the request for Professor Liu's slides under FOIA, have expressed their doubts about participating in future program reviews or sharing their most senstitive research findings with peers even if confidentiality assurances have been extended.  Id.  Harold Bright then opined that the chilling effect, if not dispelled, will seriously damage the ability of the U.S. Navy and the Marine Corps to obtain the reliable flow of high-quality information necessary to continue developing improved technologies for their mission.  Id.

      The Navy cleary has met its burden in demonstrating that the slides Professor Liu submitted were confidential.  Specifically, the Navy has demonstrated that Professor Liu voluntarily submitted his slides and that he did not "customarily disclose" the information contained in those slides to the public.  <u>Critical Mass</u>, 975 F.2d 871.

      **II  THE INFORMATION CONTAINED IN PROFESSOR LIU'S SLIDES WAS COMMERCIAL**

      Plaintiff likewise ignores controlling legal precedent in arguing that the presentation is scientific and therefore not commercial.  Under Exemption 4 the term "commercial information" is broad with the words given their ordinary meaning.  <u>Public Citizen Health Research Group v.</u>

Food & Drug Admin., Public Citizen Health Research Group v. Food & Drug Admin., 704 F.2d 1280, 1290 (D.C. Cir. 1983). "Commercial information" includes not only information that reveals basic commercial operations but also information in which the submitter has a "commercial interest". Id. at 1290.

The slides presented by Professor Liu at the Coolfont IV meeting on November 11, 2000 contain extremely sensitive and valuable commercial information. Exhibit 2 ¶ 8, ¶ 13. Professor Liu was aware that those slides contained commercially valuable information. At the outset, Professor Liu sought and was given assurances that the meeting was a confidential meeting. Exhibit 2, ¶ 5. Only after receiving these assurances did Professor Liu give his presentation. Exhibit 2 ¶ 7. Shortly after the meeting, Harvard University filed patent applications containing the subject matter contained within the slides. Exhibit 2 ¶ 12. In general, people do not file patent applications unless they consider them to be commercially valuable and to contain commercial information. Patents rights are granted by the Government in return for the patent applicant disclosing what he or she considers to be his or her invention and by disclosing the invention in sufficient detail to enable those skilled in the art to practice the claimed invention. 35 U.S.C §112, first paragraph.

Once the patent applications were filed, then Harvard University granted an exclusive license under the patent applications to Ensemble Discovery Corporation ("Ensemble"), the company Professor Liu founded so as to commercially exploit his technology - some of which was presented as the Coolfont IV meeting. Exhibit 2 ¶¶ 11, 13. Contrary to the Plaintiff's assertion, it is simply irrelevant that Ensemble was founded after the Coolfont meeting. The slides contained confidential commercial information, which was included in patent applications

filed by Harvard University. The patent applications were then licensed to Professor Liu's company to commercially exploit the technology.

Professor Liu explained that Nuevolution/AS is one of Ensemble's competitors. Liu Declaration 2005, ¶5 (Exhibit 4). Plaintiff is Nuevolution's patent counsel, and in addition to filing this request under FOIA, files and prosecutes patent application on behalf of Nuevolution/AS. It is simply disingenuous for the Plaintiff to suggest that the information contained within the slides does not constitute commercial information. Why else would Plaintiff and his client want this information if it is not commercial information?

Professor Liu has explained that his slides, among other things, describe (i) the concept of nucleic acid mediated organic syntheses together with its advantages over traditional organic syntheses, (ii) suitable chemical reagents, (iii) specific reaction schemes and reaction conditions for performing nucleic acid mediated organic syntheses, and (iv) results of experiments conducted in his laboratory. Exhibit 2 ¶ 8. In addition, the slides provide extremely sensitive confidential commercial information about *what Professor Liu had conceived and reduced to practice at the time of the Coolfont meeting*. Id., Exhibit 4 ¶5. Professor Liu believes that this information is still confidential and understands that the release of this information could be used against him and his company in a patent interference proceeding at the U.S. Patent and Trademark Office, and such a disclosure would place him and his company at a significant competitive disadvantage relative to Nuevolution/AS. Exhibit 4 ¶¶ 4 5. To suggest that Professor Liu's slides do not contain commercial information is absurd. Plaintiff has failed to provide any plausible explanation why Professor Liu's slides do not contain commercial information.

Professor Liu's slides contain commercial information, and there is ample evidence in the record to support such a finding. Plaintiff's position that the slides do not contain commercial information is meritless.

### III.  CONCLUSION

For the foregoing reasons and those stated in Defendant's Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment should be denied and Defendant's granted.

Respectfully submitted,

_____/s_____
KENNETH L. WAINSTEIN., D.C. Bar #451058
United States Attorney

_____/s_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney

_____/s_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C. 20530
(202) 353-9895

OF COUNSEL:
Luis P. Leme
Office of Naval Research (Code 00CC)
One Liberty Center
875 N. Randolph Street, Suite 1425
Arlington, VA 22203-1995